IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

EPSILON ENERGY USA, INC.,

          Plaintiff,

    v.

CHESAPEAKE APPALACHIA, LLC,

          Defendant.

Civil Action No.

District Court Judge

**MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION**

Gregory J. Krock
Pa. I.D. No. 78308
Elizabeth M. Thomas
Pa. I.D. No. 322002

**McGUIREWOODS LLP**
Tower Two–Sixty
260 Forbes Avenue, 18th Floor
Pittsburgh, PA 15222–3142
(412) 667–6000 (Telephone)
(412) 667–6050 (Facsimile)
gkrock@mcguirewoods.com
ethomas@mcguirewoods.com

Jonathan T. Blank
*Pro Hac Vice Request Forthcoming*
MCGUIREWOODS LLP
652 Peter Jefferson Parkway
Suite 350
Charlottesville, VA 22911

(434) 977-2500 (Telephone)
(434) 980-2222 (Facsimile)
jblank@mcguirewoods.com

*Counsel for Plaintiff*
*Epsilon Energy USA, Inc.*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................1

II.  FACTUAL BACKGROUND...................................................................2

    A.  The JOAs ...................................................................................2

    B.  The Settlement Agreement .........................................................3

    C.  Ownership Rights Under the JOAs .............................................4

    D.  The Proposed Wells ...................................................................6

    E.  CHK's Refusal to Cooperate and Allow Epsilon to Access Jointly-Owned Property.........................................................................7

    F.  The Proposal for the Koromlan Well .........................................19

III.  ARGUMENT......................................................................................11

    A.  Epsilon is Likely to Succeed on the Merits Because CHK Has Clearly Breached the Settlement Agreement and JOAs .................11

    B.  Epsilon Will Suffer Irreparable Harm Absent Injunctive Relief........14

    C.  CHK Will Not Be Irreparably Harmed if Injunctive Relief is Granted .....................................................................................17

    D.  Granting Injunctive Relief is in the Public Interest..........................18

IV.  CONCLUSION...................................................................................20

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Acierno v. New Castle Cty.*,
  40 F.3d 645 (3d Cir. 1994) ...................................................11

*Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*,
  2 A.3d 526 (Pa. 2010) ........................................................13

*Am. Fed'n of State v. Comm.*,
  417 A.2d 1315 (Pa. Commw. Ct. 1980) ...............................13

*Campbell Soup Co. v. ConAgra, Inc.*,
  977 F.2d 86 (3d Cir. 1992) .................................................14

*CBM Ministries of S. Cent. Pa., Inc. v. Pa. Dep't of Transp.*,
  Civ. A. No. 1:15-cv-2147, 2015 WL 7755666 (M.D. Pa. Dec. 2, 2015) ...........12

*Cont'l Grp., Inc. v. Amoco Chems. Corp.*,
  614 F.2d 351 (3d Cir. 1980) ...............................................14

*De Mik v. Cargill*,
  485 P.2d 229 (Okla. 1971) ..................................................15

*Enduro Operating LLC v. Echo Prod., Inc.*,
  413 P.3d 866 (N.M. 2018) ...................................................16

*Epsilon Energy USA, Inc. v. Chesapeake Appalachia, L.L.C.*,
  No. 3:18-cv-01852 ...............................................................3

*Green Strip, Inc. v. Berny's Internacionale, S.A.*,
  159 F. Supp. 2d 51 (E.D. Pa. 2001) .....................................19

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
  276 F.3d 160 (3d Cir. 2001) ...............................................11

*Huntley & Huntley v. Borough Council*,
  964 A.2d 855 (Pa. 2009) .....................................................19

*In the Matter of TT Boat Corp.*,
  Civ.A.–98–0494, 1999 WL 1276837 (E.D. La. 1999) ...........17

ii

*J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*,
    792 A.2d 1269 (Pa. Super. 2002) ........................................................................12

*Kos Pharm., Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004) ...............................................................................11

*McCall v. CHK Energy Corp.*,
    817 F. Supp. 2d 307 (S.D.N.Y. 2011),
    *aff'd*, 509 F. App'x 62 (2d Cir. 2013).................................................................15

*Minard Run Oil Co. v. U.S. Forest Serv.*,
    C.A. No. 09-125, 2009 U.S. Dist. LEXIS 116520 (W.D. Pa Dec. 15, 2009) ....16

*Minard Run Oil Co. v. U.S. Forest Serv.*,
    670 F.3d 236 (3d Cir. 2011) ...............................................................................14

*Nerco Oil & Gas, Inc. v. Otto Candies, Inc.*,
    64 F.3d 667 (5th Cir. 1996) ................................................................................17

*Newlife Homecare Inc. v. Express Scripts, Inc.*,
    No. 3:07cv761, 2007 U.S. Dist. LEXIS 33031 (M.D. Pa. May 4, 2007)...........18

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck*
    *Consumer Pharm. Co.*,
    290 F.3d 578 (3d Cir. 2002) ...............................................................................17

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
    920 F.2d 187 (3d Cir. 1990) ...............................................................................18

*Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*,
    143 F.3d 800 (3d Cir. 1998) ...............................................................................17

*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017) ...............................................................................11

*Remaley v. Peoples Nat. Gas*,
    307 Pa. 237 (Pa. 1932)........................................................................................15

*Robinson Twp. v. Cmw.*,
    147 A.3d 536 (Pa. 2016)......................................................................................19

*RoDa Drilling Co. v. Siegal*,
    552 F.3d 1203 (10th Cir. 2009) ..........................................................................16

*Steckman Ridge GP, LLC v. Exclusive Nat. Gas Storage Easement*
 *Beneath 11.078 Acres,*
  No. 08cv168, 2008 WL 4346405 (W.D. Pa. Sept. 19, 2008) ............................ 19

*Tantopia Franchising Co., LLC v. W. Coast Tans of PA, LLC,*
 918 F. Supp. 2d 407 (E.D. Pa. 2013) ................................................................ 18

*Transcon. Gas Pipe Line Co., LLC v. Permanent Easement for 0.03 Acres &*
 *Temp. Easement for 0.02 Acres in S. Londonderry Twp., Lebanon Cty., Pa.,*
  No. 4:17-CV-00565, 2017 WL 3485752 (M.D. Pa. Aug. 15, 2017) ................. 11

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.,*
 No. 04-977, 2007 WL 4262725 (M.D.N.C. Nov. 30, 2007) ............................. 18

*Walsh v. Powell,*
 76 Pa. D. & C. 108 (Pa. Com. Pl. 1951) ........................................................... 15

**STATUTES**

58 Pa.C.S. § 3202 .................................................................................................... 19

Plaintiff Epsilon Energy USA, Inc. ("Epsilon"), by and through its undersigned counsel, submits the following Memorandum of Law in Support of its Motion for Preliminary Injunction.

## I.   INTRODUCTION

Epsilon seeks to enjoin Defendant Chesapeake Appalachia, LLC ("CHK") from blatantly and willfully disregarding Epsilon's right to drill new oil and gas wells under the parties' joint operating agreements ("JOAs") and a 2018 Settlement Agreement and Release ("Settlement Agreement"). Epsilon sued CHK in 2018 for similar behavior. In the Settlement Agreement that resolved that lawsuit, CHK agreed that — ██████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████

CHK has elected not to participate in four new wells that Epsilon proposed under the JOAs. However, CHK has refused to cooperate with Epsilon so that it can proceed with the wells. CHK has denied Epsilon access to a jointly-owned well pad and refused to sign a document necessary for Epsilon to obtain a permit necessary to utilize a joint-owner water source to drill the wells. Despite the Settlement Agreement's unambiguous language, CHK asserts that it has "veto power" to prevent Epsilon from drilling any well in which CHK elects not to participate.

CHK's bad faith breach of the settlement agreement and JOAs, if not abated, threatens to irreparably harm Epsilon's property rights by deteriorating its mineral interests.

## II.   FACTUAL BACKGROUND

### A.   The JOAs

Beginning in 2009, Epsilon and CHK (along with other parties) began entering into JOAs for drilling units covering acreage subject to oil and natural gas leases that they would combine (or "pool") for the purposes of oil and natural gas development.  On or about February 1, 2010, Epsilon and CHK entered a Farmout Agreement covering the Blanche Poulsen North and South Units ("Poulsen Units") and incorporating a draft model JOA ("Poulsen JOA").[1]  A true and correct copy of the Farmout Agreement is attached as **Exhibit 1** (the Poulsen JOA appears in Schedule 7.1.2 at 61).

On or about October 18, 2010, Epsilon, CHK and others entered into JOAs covering the Baltzley South Unit and Baltzley North Unit ("Baltzley JOAs").  *See* **Exhibit 2** and **Exhibit 3**.  On or about December 16, 2010 Epsilon, CHK and others entered into a JOA covering the Craige Unit ("Craige JOA"). *See* **Exhibit 4**.

---

[1] For ease of reference, the drilling units on which the relevant wells that Epsilon has proposed will be located are collectively identified as the "Units."

Any working interest owner (a "JOA Party") is entitled to propose the drilling and completion of a well ("Well Proposal").  *See* Exhibits 3-6 (Article VI.1).  Upon receipt of the Well Proposal, the other JOA Parties must elect whether they will consent to participate with their working interests.  *Id.*  The JOA Parties designated CHK as the default operator to perform well-related operations under each of the JOAs.  *Id.* (Article V.A).  If CHK consents to participate in the Well Proposal, then CHK acts as the operator.  *Id.* (Article VI.2(a)).  If CHK does not consent to participate, however, one of the consenting parties can act as the operator.  *Id.*  In addition, if any JOA Party wishes to propose operations that conflict with the Well Proposal, it has 30 days to do so.  *Id.* (Article VI.6).

## B.   The Settlement Agreement

In September 2018, Epsilon filed a complaint against CHK in this Court styled as *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, L.L.C.*, No. 3:18-cv-01852. Among the allegations in that suit, Epsilon asserted that CHK failed to follow the JOAs' election processes in order to thwart Epsilon's efforts to propose and drill wells. Epsilon sought declaratory and injunctive relief. Before an injunction hearing occurred, the parties settled the dispute. A true and correct copy of the Settlement Agreement that the parties entered on October 8, 2018 is attached here as **Exhibit 5**.

CHK explicitly agreed in the Settlement Agreement that "████████████
████████████████████████████████████████████████████████████

███████████ *Id.* at ¶ 8.  With respect to any well that Epsilon has proposed, CHK

further agreed that:



*Id.* at ¶ 8(d).  Accordingly, CHK agreed that:  ████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████  The Settlement

Agreement does not grant CHK a veto right.

### C.    Ownership Rights Under the JOAs

Under each JOA, the oil and gas interests that any JOA Party owns or acquires

in the defined geographical area (the "Contract Area") are treated as joint property.

Exhibits 2-5 (Article III).  The JOAs further require that CHK grant all other JOA

Parties "full and free access at all reasonable times to all operations . . . being

conducted . . . on the Contract Area."  *Id.* (Article V.D.5).  While the JOA Parties

"shall be free to act on an arm's-length basis in accordance with their own respective

self-interest, [that freedom is] subject [ ] to the obligation of the parties to act in good

faith in their dealings with each other with respect to activities hereunder." *Id.* at (Article VII.A).

In February 2016, CHK and Aubmarc Properties, LLC ("Aubmarc") — a wholly owned subsidiary of Epsilon, — entered a Purchase and Sale Agreement ("PSA"). Relevant parts of the PSA are attached as **Exhibit 6**. Under the PSA, Aubmarc agreed to purchase properties from CHK that included ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████ *Id.* at Art. 2, p. 21; Art. 1, p. 14.

Aubmarc agreed to purchase the Properties subject to any ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ " *Id.* at Art. 1, p. 13. Exhibit A of the PSA identifies the Wyalusing Creek surface water withdrawal — which is the water source for the Craige well pad — as a purchased asset. *Id.* at Exhibit A. Importantly, the JOAs require that ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ Exhibit 2-5 (Article XVI.B).

**D.     The Proposed Wells**

Epsilon shared its growth and production goals with CHK and, in May 2020, disclosed its ideas for proposed wells at the Craige well pad located in Rush Township, Susquehanna County, Pennsylvania. **Exhibit 7**, at May-June 2020.  In subsequent communications, CHK continued to push options that did not include Epsilon's suggested wells. *Id.*  Epsilon advised that it intended to move forward with the wells that it had suggested in order to ensure that it could meet permitting timelines, and reminded CHK that the JOAs authorized Epsilon to proceed with the wells even if CHK did not consent to participate in those wells. *Id.* at October 14-15, 2020.

In a separate communication, Epsilon provided CHK with further reason to participate in Epsilon's suggested wells — the JOA Parties would benefit from a 10% discount on the gathering rate. **Exhibit 8**, Oct. 16, 2020; Dec. 16, 2020.  Two months later, CHK responded that it wanted a scenario where "Epsilon agrees not to propose on CHK . . ." *Id.* at Dec. 16, 2020.  Epsilon responded it would consider other options but needed to continue pursuing its opportunities as allowed under the JOAs. *Id.* at Dec. 17, 2020.  CHK retorted it had a "veto power" under the JOAs

and had inserted language in the JOAs "with the intent to prevent the development of wells that CHK did not want to drill." *Id.* at Dec. 18, 2020.

With discussions at a standstill, Epsilon formally proposed four wells on December 23, 2020 in accordance with the procedure set forth in the JOAs: Craige N 1LH, Craige N 1UHC, Craige N 4UHC ("Craige North Wells") and Craige S 3LHC ("Craige South Well") to be located in Rush Township, Susquehanna County, Pennsylvania ("Proposed Wells"). **Exhibit 9**, Dec. 23, 2020 Well Proposals. In conjunction with the Proposed Wells, CHK had to elect between three options: (1) participate in the wells and serve as the operator; (2) elect not to participate but serve as the operator for the consenting parties; or (3) elect not to participate and decline to serve as the operator, such that Epsilon would be the operator. *Id.* Three other JOA Parties elected to participate in the Craige South Well while none of the other JOA Parties elected to participate in the Craige North Wells.

### E. CHK's Refusal to Cooperate and Allow Epsilon to Access Jointly-Owned Property

During discussions on January 12, 2021, Epsilon reiterated its need to develop new wells while CHK continued to push alternative options. On January 19, 2021, CHK responded it did not consent to participate in the Proposed Wells and would not act as the operator. **Exhibit 10**, Jan. 19, 2021 Non-Consent Letter. CHK also asserted that Epsilon was not permitted to serve as the operator, and advised that it would not allow Epsilon access to the Craige well pad to drill the Proposed Wells.

That same day, CHK proposed a new well known as the Koromlan 107HC ("Koromlan Well").   **Exhibit 11**, Jan. 19, 2021 Koromlan Well Letter.   CHK suggested that the Proposed Wells that Epsilon had previously proposed were in conflict with the Koromlan Well.  *Id.*  On January 20, 2021, CHK further stated: "Chesapeake maintains the right to operate the Craige pad site and associated wells, and hereby does not grant approval or authority to Epsilon, or anyone else, to operate from referenced pad. . . . Subsequently, Chesapeake has plans to drill the Koromlan 107HC in early 2022, which is in conflict with Epsilon's proposed Craige S 3LHC. As such, Chesapeake's well proposal will be forthcoming along with all elections for Epsilon's proposed wells."  **Exhibit 12**, Jan. 20, 2021.

On February 9, 2021, Epsilon notified CHK that Epsilon had satisfied all of the requirements necessary to proceed with the Proposed Wells.  **Exhibit 13**, Feb. 9, 2021 Epsilon's Notice of 100% Subscription.   On February 11, 2021, CHK responded by (1) reiterating its assertion that the JOAs do not permit Epsilon to drill new wells if CHK elects not to participate in those wells and (2) stating that CHK would not sign a commitment letter that Epsilon required in order to obtain water permitting for the Proposed Wells.  **Exhibit 14**, Feb. 11, 2021.  Epsilon replied that it did not understand how CHK could claim a "super veto power that is counter to the JOAs or [the] Settlement Agreement.  It is not in good faith . . . Epsilon has continued to act in good faith and seeks only to have [CHK] recognize its rights

under the JOA and the Settlement Agreement . . ." *Id.* Two minutes later, CHK retorted: "Respectfully, this is not a good faith/bad faith discussion. The plain language of the JOA does not allow for Epsilon to assume operatorship." *Id.*

Epsilon's request for assistance in obtaining a water permit for the Proposed Wells was not a surprise to CHK. Back on July 1, 2020 — when Epsilon shared its development plans with CHK — Epsilon sought CHK's assistance in obtaining the requisite approval from the Pennsylvania Department of Environmental Protection and the Susquehanna River Basin Commission ("SRBC") for the water management plan for the Proposed Wells. **Exhibit 7**, July 1, 2020; Sept. 18, 2020. In particular, Epsilon asked CHK to sign a standard SRBC commitment letter so that Epsilon could utilize water from the Wyalusing Creek withdrawal point — an asset that ***Epsilon's subsidiary owned and contributed*** to the joint operation governed by the JOAs — to drill the Proposed Wells.

After making its formal proposal in December 2020, Epsilon renewed its efforts to obtain the water permit necessary to drill the Proposed Wells. On January 29, 2021, the SRBC provided Epsilon with a commitment letter that CHK had recently used to obtain a similar permit. **Exhibit 15**, Jan. 29, 2021. Using the commitment letter that CHK had recently used, Epsilon prepared a draft commitment letter (to be signed by CHK) that would enable Epsilon to obtain the water permit necessary for the Proposed Wells. After reviewing the draft letter, the

9

SRBC confirmed that it was acceptable and would enable Epsilon to obtain the water permit that it required for the Proposed Wells. *Id.*

On February 9, 2021, Epsilon sent the proposed SRBC letter to CHK for execution so Epsilon could finalize the permitting for its Proposed Wells. **Exhibit 13**, Feb. 9, 2021. On February 11, 2021, CHK advised it would not sign the SRBC commitment letter. *Id.* at Feb. 11, 2021. Furthermore, CHK made clear in its communications with Epsilon that it would not grant Epsilon access to the well pad in order to drill the Proposed Wells. *See* **Exhibit 10**.

### F.    The Proposal for the Koromlan Well

The proposal for the Koromlan Well indicates that the wellbore would traverse the Craige, Poulson North, Poulson South, and Davis Units. It would also traverse a drilling unit not yet formed, which CHK described as "the Bradbury Unit." In addition, the Koromlan Well's path is too close to the Craige South Well's path. Finally, the Koromlan Well would traverse a block of acreage known as the Rushboro Ventures block that is not believed to be leased (or whose lease is currently in question).

On February 9, 2021, Epsilon informed CHK that the proposal for the Koromlan Well did not meet the JOA requirements for submitting a proposal. While Epsilon note that the Koromlan Well's path would traverse non-unitized acreage, as well as acreage with a title defect, Epsilon indicated that it might support a similar

well if these issues could be overcome (provided that CHK proposed such a well in accordance with and compliance with the JOAs).   **Exhibit 16**, Feb. 9, 2021, Koromlan 107HC Well Proposal Response.

## III.   ARGUMENT

In order to obtain a preliminary injunction, the moving party must establish (1) a likelihood of success on the merits, (2) denial of injunctive relief will result in irreparable harm, (3) granting the injunction will not result in irreparable harm to the other parties, and (4) granting the injunction is in the public interest.  *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).   The primary purpose of preliminary injunctive relief "is maintenance of the status quo until a decision on the merits of a case is rendered."  *Acierno v. New Castle Cty.*, 40 F.3d 645, 647 (3d Cir. 1994).  "Status quo" refers to "the last, peaceable, noncontested status of the parties." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).[2]

### A.   Epsilon is Likely to Succeed on the Merits Because CHK Has Clearly Breached the Settlement Agreement and JOAs.

To establish a reasonable probability of success on the merits, a "plaintiff need only prove a prima facie case, not a certainty that [it] will win."  *Highmark, Inc. v.*

---

[2] "It is well established that 'a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial or on the merits.'"  *Transcon. Gas Pipe Line Co., LLC v. Permanent Easement for 0.03 Acres & Temp. Easement for 0.02 Acres in S. Londonderry Twp., Lebanon Cty., Pa.*, No. 4:17-CV-00565, 2017 WL 3485752, at *2 (M.D. Pa. Aug. 15, 2017).

*UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001). The plaintiff must only satisfy this burden for one claim. *See CBM Ministries of S. Cent. Pa., Inc. v. Pa. Dep't of Transp.*, Civ. A. No. 1:15-cv-2147, 2015 WL 7755666, at \*5 n.2 (M.D. Pa. Dec. 2, 2015). To establish a breach of contract claim, the plaintiff must prove (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages. *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269 (Pa. Super. 2002).

Here, Epsilon is likely to succeed on its breach of contract claim. The JOAs set forth the procedure for drilling a well in the event that CHK elects not to participate and declines to serve as the operator. *See* Exhibits 3-6 (Article VI.1). When a dispute arose regarding this procedure, and Epsilon filed its prior lawsuit in 2018, the parties confirmed in their Settlement Agreement that:

Exhibit 5, at ¶¶ 8, 8(d).  CHK did not consent to participate and declined to serve as the operator for the Proposed Wells that Epsilon has proposed.  Accordingly, Epsilon was designated as the operator of the Proposed Wells.

However, CHK has not cooperated with Epsilon so that it can proceed with the Proposed Wells.  CHK has repeatedly advised that it will not allow Epsilon (or any other JOA Party) to access the Craige well pad in order to drill the Proposed Wells.  In addition, CHK has refused to sign the SRBC commitment letter so that Epsilon can use the jointly-owned Wyalusing Creek withdrawal point in order to drill the Proposed Wells.  CHK's failure to cooperate constitutes a breach of the Settlement Agreement and JOAs.

To justify its refusal, CHK asserted that it effectively possesses "veto power" to prevent Epsilon from drilling new wells in which CHK has elected not to participate.  This assertion is specious.  Nothing in the JOAs allows any JOA Party, including CHK, to veto a Well Proposal to drill a new well that has been properly submitted by another JOA Party. *See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 544 (Pa. 2010) (insurer could not use a "reservation of rights letter to reserve a right it [did] not have pursuant to the contract," as such would be "tantamount to allowing the insurer to extract a unilateral amendment to the insurance contract"); *Am. Fed'n of State v. Comm.*, 417 A.2d 1315, 1318 (Pa. Commw. Ct. 1980) ("To allow the governmental party to a collective bargaining

agreement unilaterally to amend the contract during its agreed term, by legislative command, would be particularly repugnant to the constitutional concept which respects the sanctity of contract.").

Even assuming CHK possessed such veto power under the JOAs (it does not), CHK would have surrendered that power in the Settlement Agreement. The Settlement Agreement not only ███████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████. CHK's blatant disregard for the Settlement Agreement that it signed approximately two years ago to resolve a similar dispute is disturbing.

## B. Epsilon Will Suffer Irreparable Harm Absent Injunctive Relief.

Risk of irreparable harm means a clear showing of immediate irreparable injury or presently existing actual threat. *Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980). Where a party shows that an injunction is the only means of protecting the plaintiff from harm, it has met this standard. *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992).

Where "interests involving real property are at stake, preliminary injunctive relief can be particularly appropriate because of the unique nature of the property interest." *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 256 (3d Cir. 2011)

(depriving mineral right owners of their "unique oil and gas extraction opportunities" constituted irreparable injury). Because CHK is obstructing Epsilon's right to develop its jointly-owned property, and has threatened to drill a well (albeit in 2022) that would be too close to one of the Proposed Wells that Epsilon is attempting to drill, Epsilon's damages are incapable of calculation. *See Remaley v. Peoples Nat. Gas*, 307 Pa. 237, 246-47 (Pa. 1932) (affirming injunction to prevent operator's drilling that exceeded authority under lease agreements because the "threatened damage [was] irreparable, or incapable of measurement at law"); *see also Walsh v. Powell*, 76 Pa. D. & C. 108, 114 (Pa. Com. Pl. 1951) ("The removal or destruction of a material part of the substance of the land, such as the soil or minerals contained in it, is generally considered to be an irreparable injury.").

Importantly, "[o]wners of undivided interests in the ***working interest*** in an oil and gas lease are tenants in common." *De Mik v. Cargill*, 485 P.2d 229, 231 (Okla. 1971) (emphasis added); *McCall v. CHK Energy Corp.*, 817 F. Supp. 2d 307, 315 (S.D.N.Y. 2011), *aff'd*, 509 F. App'x 62 (2d Cir. 2013). Each JOA Party therefore owns an undivided interest in the oil and gas in the ground in all of the Contract Areas set forth in the JOAs. As one oil and gas commentator has explained, "no single owner has exclusive or separate rights as to any particular portion of the tract, but all such owners have a common ownership and share proportionately in the enjoyment of the property as a whole." 1–5 Kuntz § 5.1 (2011).

In addition, it is important that Epsilon promptly commence drilling operations on the Proposed Wells.  Epsilon could forfeit the opportunity to drill the Proposed Wells if it does not commence operations within the time period set forth in the Well Proposals (and it is unclear whether the same factors that support their development will be present in the future).  *Enduro Operating LLC v. Echo Prod., Inc.*, 413 P.3d 866, 871 (N.M. 2018) (listing factors that would prove that an operator commenced drilling operations and had not breached this provision of JOA).  For this reason, CHK's failure to cooperate — which will prevent Epsilon from obtaining the required water permit and preparing the Craige well pad — threatens to prevent Epsilon from commencing the drilling operations within the time period set forth in its Well Proposals.  *Minard Run Oil Co. v. U.S. Forest Serv.*, C.A. No. 09-125, 2009 U.S. Dist. LEXIS 116520, at *88-89 (W.D. Pa Dec. 15, 2009) (granting injunctive relief because the defendant's ban on drilling caused irreparable harm); *see also RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211-12 (10th Cir. 2009) (upholding grant of injunctive relief because "lost opportunities and costs and inefficiencies" are appropriate irreparable harm findings).  Epsilon's mineral interests underlying the Units will be irreparably harmed if Epsilon is unable to promptly drill the Proposed Wells.

**C.    CHK Will Not Be Irreparably Harmed if Injunctive Relief is Granted.**

The potential harm to Epsilon's mineral interests far exceeds any harm that CHK might experience if the Court grants injunctive relief.  The only harm CHK could arguably face is the delay in production and development of the Koromlan Well, which is not slated for development until 2022.  This harm is particularly speculative given the lack of information CHK provided in its well proposal and the issue surrounding developing the Koromlan Well.[3]

Moreover, "the injury [CHK] might suffer if an injunction were imposed may be discounted by the fact that [CHK] brought that injury upon itself." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002); *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806 (3d Cir. 1998) ("The self-inflicted nature of any harm suffered by [defendant] also weighs in favor of granting preliminary injunctive relief.").  By intentionally disregarding the Settlement Agreement's unambiguous terms, in an

---

[3] In cases of delayed production, some courts have expressed concern that allowing recovery of lost profits may result in a double recovery as the oil and gas reserves are produced later. Courts thus look for other ways to measure the loss. *See, e.g., Nerco Oil & Gas, Inc. v. Otto Candies, Inc.*, 64 F.3d 667, 668-70 (5th Cir. 1996) (comparing the discounted stream of net revenue that would have been earned over the life of production with no delay to a discounted stream of net revenue with delay); *In the Matter of TT Boat Corp.*, Civ.A.–98–0494, 1999 WL 1276837, at **2– 7 (E.D. La. 1999) (same).  Furthermore, Epsilon has requested expedited discovery to uncover CHK's true motivations in proposing the Koromlan well given the significant delay in when CHK proposes to drill that well.

attempt to veto Epsilon's current development activities in favor of a well that CHK desires to drill in 2022, the only harm that CHK could experience would be self-inflicted. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) ("By virtue of this recalcitrant behavior, the [defendant] can hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself.")

In short, the requested injunction will not burden CHK in any cognizable way. The injunction would simply prevent CHK from doing that "which the law already prohibits." *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, No. 04-977, 2007 WL 4262725, at *3 (M.D.N.C. Nov. 30, 2007); *see also Tantopia Franchising Co., LLC v. W. Coast Tans of PA, LLC*, 918 F. Supp. 2d 407, 420 (E.D. Pa. 2013) ("In balancing the hardships to the parties, any injury defendants might suffer as a result of the . . . preliminary injunction is significantly outweighed by the irreparable harm plaintiff would continue to suffer. . . .").

**D.    Granting Injunctive Relief is in the Public Interest.**

If a plaintiff "demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Newlife Homecare Inc. v. Express Scripts, Inc.*, No. 3:07cv761, 2007 U.S. Dist. LEXIS 33031, at *26 (M.D. Pa. May 4, 2007) (citation omitted). Moreover, it is well established that "a public interest exists in the enforcement of

contracts." *Id.* (granting preliminary injunction); *Green Strip, Inc. v. Berny's Internacionale, S.A.*, 159 F. Supp. 2d 51, 56 (E.D. Pa. 2001) ("an injunction is consistent with the public interest in requiring parties to live up to their legal contracts.").

In addition, the public benefits from the efficient development of oil and gas resources so as to ensure there is not an adverse effect on the supply of natural gas or an adverse impact on natural gas prices. *Steckman Ridge GP, LLC v. Exclusive Nat. Gas Storage Easement Beneath 11.078 Acres*, No. 08cv168, 2008 WL 4346405, at *17 (W.D. Pa. Sept. 19, 2008). Pennsylvania courts have repeatedly recognized the importance of the efficient development of natural resources. *See Huntley & Huntley v. Borough Council*, 964 A.2d 855, 865 (Pa. 2009) ("The state's interest in oil and gas development is centered primarily on the efficient production and utilization of the natural resources in the state."); *Robinson Twp. v. Cmw.*, 147 A.3d 536, 559 (Pa. 2016) ("[T]he primary purpose of [the Pennsylvania Oil and Gas Act] was 'to provide a maximally favorable environment for industry operators to exploit Pennsylvania's oil and natural gas resources, including those in the Marcellus Shale Formation.'") (citing 58 Pa.C.S. § 3202)). The requested injunction will serve the public interest by facilitating the efficient development of oil and gas in Pennsylvania.

## IV.   CONCLUSION

For the forgoing reasons, Epsilon has demonstrated a likelihood of success on the merits, the existence of imminent irreparable harm, that the balance of harms tips decidedly in its favor, and that an injunction will advance the public interest.  The Court should therefore enter an order:

a.   restraining CHK and anyone acting or participating by, through, or in concert with it from:

 i.   interfering with Epsilon's preparation, operation, or drilling of the Proposed Wells, including interference with Epsilon's access to the well pad and access to water facilities;

 ii.   soliciting, encouraging, or causing any other entity or person to interfere with Epsilon's preparation, operation, and drilling of the Proposed Wells, including interference with Epsilon's access to the well pad; or

 iii.   soliciting, encouraging, or causing any other entity or person to move forward with the development of the Koromlan Well as currently proposed.

b.   requiring CHK to sign the SRBC commitment letter;

c.   requiring CHK to take all actions to cooperate with Epsilon when CHK does not consent to a Epsilon proposal and declines to serve as the operator for that proposal, including (but not limited to) assistance with permitting and providing access to and use of co-owned assets.

Dated: March 9, 2021                    Respectfully submitted,

                                        /s/    *Gregory J. Krock*
                                        Gregory J. Krock
                                        Pa. I.D. No. 78308
                                        Elizabeth M. Thomas
                                        Pa. I.D. No. 322002

                                        MCGUIREWOODS LLP
                                        Tower Two-Sixty
                                        260 Forbes Avenue, Suite 1800
                                        Pittsburgh, PA 15222-3142
                                        (412) 667-6000 (Telephone)
                                        (412) 667-6050 (Facsimile)
                                        gkrock@mcguirewoods.com
                                        ethomas@mcguirewoods.com

                                        Jonathan T. Blank
                                        *Pro Hac Vice Request Forthcoming*
                                        MCGUIREWOODS LLP
                                        652 Peter Jefferson Parkway
                                        Suite 350
                                        Charlottesville, VA 22911
                                        (434) 977-2500 (Telephone)
                                        (434) 980-2222 (Facsimile)
                                        jblank@mcguirewoods.com

                                        *Counsel for Plaintiff*
                                        *Epsilon Energy USA, Inc.*

## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EPSILON ENERGY USA, INC.,

               Plaintiff,

     v.

CHESAPEAKE APPALACHIA, LLC,

               Defendant.

Civil Action No.

District Court Judge

### CERTIFICATE OF COMPLIANCE REGARDING BRIEF

The undersigned hereby certifies that this Memorandum of Law complies with the word–count limitations contained in Rule 7.8(b)(2) of the Local Rules for the United States District Court for the Middle District of Pennsylvania. Exclusive of the tables of contents and authorities, the Memorandum of Law contains 5,017 words according to the word count function the Microsoft Word 2010 software with which the memorandum was produced.

/s/    *Gregory J. Krock*
Gregory J. Krock
Pa. I.D. No. 78308

MCGUIREWOODS LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222-3142
(412) 667-6000 (Telephone)
(412) 667-6050 (Facsimile)
gkrock@mcguirewoods.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

**Brief in Support of the Motion for Preliminary Injunction** has been served on

served upon the following by mail, this <u>9th day of March 2021</u>:

> Chesapeake Appalachia, LLC
> c/o The Corporation Company
> 1833 S. Morgan Road
> Oklahoma City, OK 73128

/s/    *Gregory J. Krock*